UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

FLORENCE MULHOLLAND, on behalf of herself :
and as administratrix of the estate of DAVID :
MULHOLLAND, :
                                           :
                  Plaintiff, :
                                           :
   -against- :
                                           :
PHILIP MORRIS USA INC., :
                                           :
                Defendant. :
                                           :
                                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**05 Civ. 9908 (CS) (LMS)**
**ECF Case**

### DEFENDANT'S MOTION *IN LIMINE* NUMBER 16 TO EXCLUDE DAVID MULHOLLAND'S LAY TESTIMONY REGARDING HIS ALLEGED ADDICTION AND REGARDING WHAT HE "WOULD HAVE DONE" UNDER DIFFERENT CIRCUMSTANCES

Defendant Philip Morris USA Inc. ("PM USA") respectfully moves this Court for an order *in limine* precluding Plaintiff from introducing David Mulholland's deposition testimony regarding two subjects: (1) his alleged addiction to nicotine; and (2) what he "would have done" had PM USA's conduct been different. As explained below, although the defendants in *Grill* and *Clinton* made similar motions, the Court did not rule directly on these issues in those two cases. Mr. Mulholland's lay addiction testimony is inadmissible because any opinion on addiction must be "based on scientific, technical, or other specialized knowledge," which Mr. Mulholland lacked, Fed. R. Evid. 701(c); and his testimony about what he "would have done" under different circumstances is inadmissible because it is speculative and not "rationally based on [his] perception," Fed. R. Evid. 701(a).

**ARGUMENT**

### I.   LAY ADDICTION TESTIMONY

In certain portions of his deposition, Mr. Mulholland testified that he was at various times "addicted" to Marlboro cigarettes.  Oct. 18, 2005, Mulholland Dep. Tr. (Ex. 33[1]) at 18:7-15, 34:15-24, 35:13-16.   PM USA moves to exclude this testimony because an opinion as to addiction requires "scientific, technical, or other specialized knowledge." Fed. R. Evid. 701(c).[2]

In *Grill*, PM USA made a similar motion, *see Grill* Def. Mot. *in Limine* No. 5 (Ex. 4), but later withdrew it after briefing, *see* Feb. 22, 2011, *Grill* Order (Ex. 17) at 1.   In *Clinton*, American Tobacco Company moved to exclude Mr. Champagne's statements to his daughter that he was addicted to cigarettes, but on hearsay grounds rather than under Rule 701.   *See* June 25, 2012, *Clinton* Hr'g Tr. ("*Clinton* Hr'g Tr.") (Ex. 30) at 32-33.[3]  Thus, the Court has not yet made a ruling applicable to the Rule 701 argument PM USA makes here.

Rule 701 provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:  (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

---

[1]      All exhibits referenced herein refer to the documents attached to the Declaration of Scott A. Chesin in Support of Philip Morris USA Inc.'s Motions *In Limine* Numbers 1-17, dated April 19, 2013.

[2]      If the Court admits Mr. Mulholland's testimony regarding his "addiction" to Marlboro cigarettes, PM USA requests a limiting instruction clarifying that Mr. Mulholland was not referring to the medical definition of "addiction" but only to his lay understanding of the term.

[3]      The  Court ruled that "statements along the lines of, I'm addicted, and I can't stop, come in as present statement of mind"; and that "statements about, I'm going to try to stop, come in as statements of future intent"; but that "statements about, I've tried to stop and failed," would be excluded.  *Clinton* Hr'g Tr. (Ex. 30) at 32.

"The purpose of [the third] requirement is to prevent a party from conflating expert and lay opinion testimony thereby conferring an aura of expertise on a witness without satisfying the reliability standard for expert testimony set forth in Rule 702." *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005). If the opinion at issue "rests *in any way* upon scientific, technical, or other specialized knowledge, its admissibility must be determined by reference to Rule 702, not Rule 701." *Id.* (emphasis added) (internal quotation marks omitted).

As PM USA explained in *Grill*, substance abuse is a complex mental disorder that is classified according to criteria set forth by the American Psychiatric Association ("APA"). *See* APA, *Diagnostic and Statistical Manual of Mental Disorders—Fourth Edition* ("DSM-IV-TR") at 192-98, 264-69 (4th ed. 2000) (Ex. 53). According to the APA, the criteria for diagnosing substance dependence "are meant to be employed by individuals with appropriate *clinical training and experience* in diagnosis," *id.* at xxxii (emphasis added), which Mr. Mulholland indisputably lacked. Indeed, by designating Dr. Cummings to opine on whether Mr. Mulholland was addicted, Plaintiff essentially acknowledges the need for expert opinion testimony on this topic (even though, as explained in PM USA's fifteenth motion *in limine*, Dr. Cummings is not in fact qualified to testify about addiction).

For similar reasons, numerous courts have recognized that an opinion on addiction requires the knowledge, skill, experience, and training of an expert. *See, e.g.*, *McCauley v. Purdue Pharma L.P.*, 331 F. Supp. 2d 449, 464 (W.D. Va. 2004) ("[T]olerance, dependence, abuse, and addiction are complex medical conditions . . . that are properly diagnosed by experienced professionals with appropriate medical knowledge."); *Conley v. R.J. Reynolds Tobacco Co.*, 286 F. Supp. 2d 1097, 1112 (N.D. Cal. 2002) ("The testimony offered by plaintiffs' witnesses established that 'addiction' is a clinical concept, appropriate for expert

testimony . . . ."); *Liggett Grp. Inc. v. Engle*, 853 So. 2d 434, 447 n.12 (Fla. 3d DCA 2003) ("*Engle I*") ("[I]t is apparent that evaluation of each class members' [sic] comparative fault, *will require experts* on both sides to consider issues unique to each smoker, such as . . . addiction issues . . . ." (emphasis added)), *rev'd in part on other grounds*, *Engle v. Liggett Grp., Inc.*, 945 So. 2d 1246 (Fla. 2006) ("*Engle II*"); *Barnes v. Am. Tobacco Co., Inc.*, No. 96-5903, 1997 WL 414943, at *2 (E.D. Pa. July 22, 1997) (requiring an expert psychiatric examination where "plaintiffs' underlying legal theory continue[d] to place in controversy the basic factual question as to whether plaintiffs [we]re 'addicted' or 'nicotine dependant'").

In *Grill*, the plaintiff made four arguments in response to PM USA's motion to exclude lay addiction testimony, none of which has merit.

*First*, he argued that "[t]he question [under Rule 701] is not whether the *conclusion* reached is one that may require specialized knowledge, but rather, whether that conclusion was reached with the '*reasoning processes* familiar to the average person in everyday life.'" *Grill* Pl. Opp'n to Def. Mot. *in Limine* No. 5 ("*Grill* Pl. Opp'n No. 5") (Ex. 4) at 3 (emphases added by the plaintiff) (quoting *Garcia*, 413 F.3d at 215). He then argued that an "ordinary person" could reach a conclusion as to addiction "using a reasoning process common to everyday life." *Id.* That is wrong. As discussed above, an ordinary person could *not* reach a reliable conclusion as to addiction using an everyday reasoning process. The necessary "reasoning process" involves an evaluation of complex criteria established in the clinical literature—criteria that "are meant to be employed by individuals with appropriate clinical training and experience in diagnosis." DSM-IV-TR (Ex. 53) at xxxii; *see also McCauley*, 331 F. Supp. 2d at 464; *Conley*, 286 F. Supp. 2d at 1112; *Engle I*, 853 So. 2d at 447 n.12. Again, the fact that Plaintiff herself has designated

an expert to opine on addiction indicates her awareness that the issue does not lend itself to the deliberative reasoning process of an ordinary person.

*Second*, the plaintiff in *Grill* argued that because his "lay witnesses wish[ed] to offer opinions regarding the colloquial term 'addiction,' and not the medically diagnosed condition of 'Nicotine Dependency,'" those opinions "would not require an analysis of the scientific technicalities attendant with a medical diagnosis." *Grill* Pl. Opp'n No. 5 (Ex. 4) at 1.  For one thing, even as the plaintiff himself defined it, any "colloquial" definition of addiction would at the very least require an assessment of "emotional dependence," "enhanced tolerance," and "physical dependence," *id.* at 2 n.1 (quoting *Black's Law Dictionary* (9th ed. 2009)), all of which are medical concepts that are properly evaluated by medical professionals.  More importantly, PM USA's position is that "addiction" is *not* a "colloquial" term but a "complex medical condition . . . that [is] properly diagnosed by experienced professionals with appropriate medical knowledge." *McCauley*, 331 F. Supp. 2d at 464; *see also Conley*, 286 F. Supp. 2d at 1112 ("'[A]ddiction' is a clinical concept, appropriate for expert testimony . . . .").  Indeed, the *Grill* plaintiff's argument would eviscerate Rule 701(c), because it would permit *any* lay opinion under the theory that the witness is opining on the "colloquial" definition of a term ("disability," "heart disease," "obsessive compulsive disorder") rather than its accepted clinical definition.

*Third*, the plaintiff in *Grill* attempted to distinguish the cases PM USA cited by arguing that those cases required experts on addiction only because they "involve[d] tobacco *class actions*." *Grill* Pl. Opp'n No. 5 (Ex. 4) at 4 n.3 (citing *Engle I*, *Conley*, and *Barnes*).  *Conley*, in fact, was not a class action, but a case brought by three individual plaintiffs.  And *Engle I* and

*Barnes* attached no significance to the fact that the cases involved class actions.[4]   That is no surprise, because PM USA can conceive of no reason why Rule 701 would preclude lay addiction testimony in class actions but not in lawsuits involving individual plaintiffs, nor did the *Grill* plaintiff provide any.   In any event, as this Court is by now aware, plaintiffs in individual smoking-and-health actions (like the plaintiffs in *Grill* and *Clinton*) regularly present expert testimony on the subject of addiction.   For example, Dr. Glassman and Dr. Grunberg testified in *Grill* and *Clinton*, respectively, about the addictiveness of nicotine.

*Fourth*, the plaintiff cited *Singletary v. Secretary of Health, Education & Welfare*, 623 F.2d 217 (2d 1980), as supposed "[d]irect precedent" supporting the admissibility of lay opinions on addiction, arguing that the court in that case allowed a lay witness to opine that his father was an alcoholic.   *Grill* Pl. Opp'n No. 5 (Ex. 4) at 4.   But *Singletary* did not hold that a lay opinion was permissible on the issue of *alcoholism*; it held that the son should have been permitted to testify about his father's "alcohol intake," "life style," and "drunkenness," as well as the impact of those factors on his father's ability to work.   623 F.2d at 219.   In other words, the son could describe his personal observations about his father's conduct, but the court did not rule that he could opine on whether his father was *addicted* to alcohol.   Similar reasoning applies here: Plaintiff and her fact witnesses may describe their personal observations of Mr. Mulholland's smoking habits and efforts to quit, but any lay testimony on whether Mr. Mulholland was addicted to cigarettes should be precluded under Rule 701.[5]

---

[4]      Indeed, the court in *Engle I* decertified the class in part because the case would "require experts on both sides to consider issues unique to each smoker, such as . . . addiction issues." 853 So. 2d at 447 n.12.

[5]      The plaintiff in *Grill* similarly mischaracterized *Tufariello v. Long Island Railroad Co.*, 458 F.3d 80 (2d Cir. 2006), as "allowing plaintiff to testify as a lay witness that loud noise caused his hearing loss because his conclusion was 'based' on his own perception."   *Grill* Pl. Opp'n No. 5 (Ex. 4) at 3 (citing *Tufariello*, 458 F.3d at 90).   The court actually concluded that

## II.     SPECULATIVE TESTIMONY

During his deposition, Mr. Mulholland made several statements regarding what he "would have done" had PM USA's conduct been different, including that: (1) he would not have started smoking if he had been told that it could cause cancer or could kill him, *see* Oct. 18, 2005, Mulholland Dep. Tr. (Ex. 33) at 16:18-17:5; and (2) he would not have started smoking if he had been told that cigarettes could be addictive, *id.* at 17:9-24.  PM USA moves to preclude Plaintiff from offering any such testimony because it is both speculative and not "rationally based on [Mr. Mulholland's] perception."  Fed. R. Evid. 701(a).

In *Grill*, PM USA made a similar motion.  *See Grill* Def. Mot. *in Limine* No. 17 (Ex. 11). At a hearing on January 31, 2011, the Court indicated its agreement with PM USA's position. *See* Jan. 31, 2011, *Grill* Hr'g Tr. (Ex. 16) at 106-07 ("It would be excluded because it's opinion testimony not based on perception that essentially is speculation, self-serving and the sort of thing courts should keep out.").  Plaintiff's counsel then stated that he had failed to provide sufficient authority for his position because he had been "under the belief that this exact issue had been decided" by the Court's opinion on summary judgment.  *Id.* at 107.  The Court permitted the plaintiff to provide supplemental authority, while noting that "[t]he defendants ha[d] given a number of cases which . . . [we]re on point" and "ha[d] the law on their side."  *Id.* at 108.  Plaintiff never provided any supplemental authority, but instead submitted a letter to the Court representing that he would not proffer testimony on the subject of PM USA's motion, after which the Court held that the motion was moot.  *See* Feb. 22, 2011, *Grill* Order (Ex. 17) at 2.

Rule 701 permitted the plaintiff to testify "that he *experienced pain* upon hearing the train blasts and that they *made his ears ring*," not that he could testify about his hearing loss.  *Tufariello*, 458 F.3d at 90 (emphases added).  Indeed, in the very next paragraph, the court discussed a doctor's testimony the plaintiff had offered "to show the causal connection between [the] pain-causing noise and hearing loss," and "assum[ed] that [the doctor was] qualified to give such an *expert* opinion."  *Id.* (emphasis added).

For the reasons the Court found convincing in *Grill*, Plaintiff should not be permitted to introduce Mr. Mulholland's speculative statements.  Testimony about hypothetical actions Mr. Mulholland might have taken had he been aware of hypothetical information is based on speculation rather than on his actual perception.  Federal courts routinely exclude such evidence. *See, e.g.*, *Washington v. Dep't of Transp.*, 8 F.3d 296, 300 (5th Cir. 1993) (affirming, in a failure-to warn suit, a district court's refusal to permit the plaintiff's witness to testify about "what he would have done had he seen the warning label . . . [b]ecause such testimony would not have been based upon [his] perception, but upon his self-serving speculation"); *Kloepfer v. Honda Motor Co.*, 898 F.2d 1452, 1459 (10th Cir. 1990) (affirming the district court's refusal under Rule 701 "to allow [plaintiff] to make speculative and self-serving statements to the effect that had a different warning been on [a] vehicle, she would not have allowed her six-year-old son to ride it"); *Elyria-Lorain Broad. Co. v. Lorain Journal Co.*, 298 F.2d 356, 360 (6th Cir. 1961) ("[A] witness may not testify to what he would have done had the situation been different from what it actually was.  Such an answer is too speculative to be admissible."); *Devany v. Chester*, No. 83 Civ. 8455, 1989 WL 52375, at *5 (S.D.N.Y. May 10, 1989) ("Vague, self-serving speculative testimony concerning what a party would have done under different circumstances is generally not admissible."); *Messenger v. Bucyrus-Erie Co.*, 507 F. Supp. 41, 43 (W.D. Pa. 1980) (excluding plaintiff's testimony that he would have acted differently if adequate warnings had been given because "the testimony was a pure conclusion based on speculation, was self-serving, and contained no adequate basis of factual support"); *see also* Jan. 31, 2011, *Grill* Hr'g Tr. (Ex. 16) at 108 (noting that *Devaney*, *Washington*, and *Kloepfer* were "on point").

In opposing PM USA's motion in *Grill*, the plaintiff made two arguments.

*First*, he argued that "Ann Grill's statement that she never would have started smoking had she known about the dangers of smoking is directly relevant to the issue of fraudulent concealment." *Grill* Pl. Opp'n to Def. Mot. *in Limine* No. 17 ("*Grill* Pl. Opp'n No. 17") (Ex. 11) at 2. Whether or not that is correct, it misses the point. Even relevant lay witness testimony is admissible only if it is "rationally based on the witness's perception" under Rule 701, regardless of whether, as the plaintiff argued, "[t]here is no better evidence" to prove his point or whether, "[w]ithout this information, [he] is left virtually without proof." *Id.* at 3.

*Second*, the plaintiff in *Grill* argued that Mrs. Grill's statements were not speculative because "she did, in fact, attempt to quit smoking once she learned of the danger." *Id.* at 4. Here, so far as we are aware, Mr. Mulholland did not claim that he tried to quit smoking once he learned of its dangers. He claimed that he tried to stop smoking a few times at age fifteen, but also alleged that he did not learn that smoking could be dangerous until decades later. Oct. 18, 2005, Mulholland Dep. Tr. (Ex. 33) at 148. He further claimed that he did not make another attempt to quit until the late 1980s at the earliest, and then only because his wife told him that their children did not like the smell of smoke. Sept. 21, 2005, Mulholland Dep. Tr. (Ex. 33) at 148:14-25. He did not tie any of his attempts to quit to his discovery of the health risks of smoking.

In any event, the *Grill* plaintiff's argument lacked merit even in that case. As PM USA argued in *Grill*, certainly Rule 701 would not have prevented the plaintiff from offering contemporaneous evidence that Mrs. Grill attempted to stop smoking at the time she allegedly learned it was dangerous—that is, evidence of what *actually* happened—but what Rule 701 precluded was testimony that she *would have* acted differently if only PM USA had acted

differently.  *Grill* Def. Mot. *in Limine* No. 17 (Ex. 11) at 3.  The latter is pure speculation, as the federal cases cited above make clear.[6]

## CONCLUSION

For the foregoing reasons, the Court should preclude Plaintiff from presenting David Mulholland's lay testimony regarding:  (1) his alleged addiction to nicotine; and (2) what he "would have done" had PM USA's conduct been different.

Dated: New York, New York
      April 19, 2013

Respectfully submitted,

WINSTON & STRAWN LLP

By:  /s/ Thomas J. Quigley
    Thomas J. Quigley
    Jennifer L. Malin
200 Park Avenue
New York, N.Y. 10166
(212) 294-6700
tquigley@winston.com
jmalin@winston.com

Scott A. Chesin
MAYER BROWN LLP
1675 Broadway
New York, N.Y. 10019
(212) 506-2500
sachesin@mayerbrown.com

*Attorneys for Defendant Philip Morris USA Inc.*

---

[6]     The plaintiff in *Grill* also cited a decision by a Florida trial judge concluding that it was permissible for relatives to testify as to what the decedent would have done if he had additional information about the hazards of smoking.  *See Grill* Pl. Opp'n No. 17 (Ex. 11) at 5-6.  This case is inapposite because the court was not applying Rule 701.